OPINION
On April 8, 1998, plaintiff, James E. Chapple, filed this declaratory judgment action to determine whether he is entitled to recover underinsured motorist benefits under the terms of a homeowners' insurance policy issued to his parents by defendant, Erie Insurance Company.
On July 31, 1997, plaintiff was injured by an underinsured motorist in an accident which occurred on State Route 82 in Lorain County, Ohio. On June 18, 1998, plaintiff was paid the limit of the negligent driver's insurance policy. Thereafter, plaintiff sought to recover underinsured motorists benefits from defendant under a homeowners' policy issued to plaintiff's parents, James A. and Izabela Chapple. Defendant denied coverage, whereafter plaintiff filed this action for declaratory judgment.
On June 29, 1998, and July 31, 1998, the parties filed opposing motions for summary judgment. Both motions were submitted to the court for decision upon stipulated facts. On January 5, 1999, the trial court denied the plaintiff's motion and granted the defendant's motion. Plaintiff now appeals raising the following four assignments of error:
 [1.] THE LOWER COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW WHEN IT RULED THAT A POLICY WHICH PROVIDES LIABILITY INSURANCE COVERAGE FOR MOTOR VEHICLES IS NOT A "MOTOR VEHICLE LIABILITY INSURANCE POLICY" WITHIN THE MEANING OF OHIO'S UNINSURED/UNDERINSURED MOTORIST INSURANCE LAW.
 [2.] THE LOWER COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW IN FAILING TO LIBERALLY CONSTRUE OHIO'S UM/UDM LAW TO EFFECTUATE THE LEGISLATURE'S REMEDIAL PURPOSE AND IN FAILING TO CONSTRUE ANY AND ALL AMBIGUITIES IT DISCERNED IN THE ERIE POLICY STRICTLY AGAINST THE APPELLEE-INSURER AND LIBERALLY IN FAVOR OF THE APPELLANT-INSURED.
 [3.] THE LOWER COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW WHEN IT HELD THE ERIE POLICY IS NOT A "MOTOR VEHICLE LIABILITY INSURANCE POLICY" BECAUSE THE APPELLANT-INSURER LABELED IT A "HOME PROTECTOR" POLICY AND BECAUSE IT DISCERNED THE PREDOMINATE PURPOSE OF THE ERIE POLICY TO BE HOME PROTECTION.
 [4.] THE LOWER COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW WHEN IT HELD THAT APPELLANT WAS BARRED FROM UM/UDM COVERAGE BECAUSE, AT THE TIME OF THE CRASH, HE WAS NOT OPERATING A MOTOR VEHICLE OF A TYPE WHICH WAS COVERED UNDER THE ERIE POLICY.
As stipulated, the facts of this matter are as follows:
 At all times relevant to this action, Plaintiff James E. Chapple has resided in the household of his parents, James A. and Izabela Chapple, at 390 Westchester Drive, Brunswick, Ohio.
 On July 31, 1997, Plaintiff was operating his 1998 Ford Mustang westbound on State Route 82 in Eaton Township, Lorain County, Ohio. Plaintiff was in an accident ("the Crash") with a 1968 Chevrolet Corvette operated by Karen L. Kline ("Tortfeasor.") At the time of the Crash, there were no passengers in the vehicle driven by Tortfeasor. The accident was caused by the negligence of Tortfeasor, and Plaintiff sustained serious injuries and losses as a direct and proximate result of the Crash.
 A. Automobile Liability Insurance Policies In Place At The Time of the Crash
 At all times relevant, Tortfeasor was insured only under an automobile liability insurance policy issued by Progressive Insurance Company, No. 40057505-1, 9605, 01896 ("Tortfeasor's Policy"). The Tortfeasor's Policy provided liability coverage in the amount of $15,000/$30,000 for bodily injury and $10,000 for property damage liability.
 At all times relevant, Plaintiff had a motor vehicle policy of insurance issued by the Progressive Insurance Company, Policy No. 02799770-2, which provided, inter alia, uninsured/underinsured motorist coverage of $12,500/$25,000. ("Plaintiff's Policy").
 At all times relevant, Plaintiff's parents, James A. and Izabela Chappel had a policy of automobile liability insurance issued by Motorists Mutual Insurance Company,
 No. 1688-06-528604-06A. (The "Parents' Policy") The Parent's Policy provides, inter alia, $100,000 in uninsured motorist's coverage, but at all times relevant, expressly excluded Plaintiff from coverage.
 Plaintiff's injuries and losses proximately resulting from The Crash exceed the limit of coverage available for payment to Plaintiff under all liability bonds and insurance policy covering Tortfeasor. On the eighteenth day of June, 1998, Plaintiff was tendered payment in the amount of $15,000, representing policy limits of all liability bonds and insurance policies covering Tortfeasor.
B. THE ERIE POLICY
1. Issuance
 At all times relevant, James A. and Izabela Chapple owned a "home protector" policy of insurance, No. Q50 2703929 K, issued to them by Defendant Erie Insurance Group. (The "Erie Policy") . . . Defendant never offered Mr. and Mrs. Chapple uninsured or under insured motorist coverage ("UM/UDM Coverage") when the parties entered into the contract for the Erie Policy or on the occasion of any subsequent renewal thereof. Mr. and Mrs. Chappel did not reject UM/UDM Coverage at any time. The parties did not intend underinsured coverage to be provided by The Erie Policy. The Erie Policy was in effect at all times relevant to this action.
2. Pertinent Provisions
 The Erie Policy is a homeowners' policy of insurance. It provides at Section II, entitled "Home and Family Liability Protection," in pertinent part, as follows:
 OUR PROMISE
 We will pay all sums up to the amount shown on the Declarations which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage resulting form an occurrence during this policy period. We will pay for only personal injury or property damages covered by this policy.
* * *
 WHAT WE DO NOT COVER — EXCLUSIONS We don't cover under Person [sic] Liability Coverage and Medical Payments to
 Other Coverage:
* * *
 6. Personal injury or property damage arising out of the ownership, maintenance or use of:
a. aircraft;
 b. any land motor vehicle owned or operated by or rented or loaned to anyone we protect.
We do cover motor vehicles if:
 1.) they are used exclusively at an insured location and not subject to motor vehicle registration;
 2.) they are kept in dead storage at an insured location;
 3.) they are a recreational land motor vehicle not designed for use on public roads while at an insured location;
4.) they are a golf cart, wherever used or located;
 5.) they are a lawn or farm type vehicle or snowblower, wherever used or located, if not subject to motor vehicle registration;
6.) they are designed to assist the handicapped.
 Prior to commencing the within action for declaratory relief, Plaintiff demanded Defendant extend UM/UDM Coverage for the personal injuries and other losses he has sustained as direct and proximate result of The Crash and he has complied with the terms of the Erie Policy as to commencing suit against Defendant. Defendant denied this demand and has asserted that the Erie Policy does not provide UM/UDM Coverage. This declaratory judgment actions [sic] ensued.
When reviewing the allowance or denial of a motion for summary judgment, this court applies the same standard applied by the trial court. Grafton v. Ohio Edision Co. (1996), 77 Ohio St.3d 102
. Under both the Ohio and federal rules, in order to obtain summary judgment, a party must establish: (1) that there is no genuine issue as to any material fact; (2) that the party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. When determining whether a genuine question of material fact exists, a court is always obligated to view the evidence presented in the light most favorable to the nonmoving party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317. However, provided a party has satisfied the three-part inquiry set forth above, the nonmoving party is not permitted to rest upon the mere allegations or denials contained in his or her pleadings, but must come forth with specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E); Wing v. Anchor Media, Ltd.
(1991), 59 Ohio St.3d 108, 111, following Celotex v. Catrett
(1986), 477 U.S. 317, 106 S.Ct. 2548.
Having applied the law to the stipulated facts of this case, we conclude that summary judgment in favor of the defendant was inappropriate. Moreover, we find that summary judgment should have been entered in favor of the plaintiff. Accordingly, for the reasons that follow, we reverse the January 5, 1999 judgment of the trial court which denied the plaintiff's motion for summary judgment and which granted the defendant's motion.
R.C. 3937.18 provides, in pertinent part, that:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
 (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy. * * *
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less that the limits for the insured's uninsured motorist coverage. * * *
Plaintiff argues that the homeowners' policy, as set forth in the stipulated facts above, constitutes an automobile or motor vehicle liability policy of insurance, and, therefore, that he is entitled to uninsured/underinsured motorist coverage by operation of law. This same claim was recently addressed by this court in State Auto. Mut. Ins. Co. v. Lopez (Sept. 30, 1999), Franklin App. No. 99AP-15, unreported, discretionary appeal not allowed, State Auto. Mut. Ins. Co. v. Lopez (2000), 87 Ohio St.3d 1494
. Therein, this court found that a similar homeowners' policy constituted an automobile and/or motor vehicle liability policy pursuant to R.C. 3937.18. We also addressed and disposed of each of the defenses to such a claim raised by the defendant in the context of this appeal.
Defendant first argues that the homeowners' policy is not an automobile or motor vehicle policy because it would not have been approved for issuance or delivery as an automobile or motor vehicle liability policy in this state. We explained inState Auto, however, that the Ohio Supreme Court has rejected this argument. Specifically, in Selander v. Erie Ins. Group
(1999), 85 Ohio St.3d 541, the Supreme Court held that the fact that a policy would not comply with the mandates of R.C. Chapter 4509 does not demonstrate that the policy was not intended to provide uninsured/underinsured motorist coverage. Rather, the nature of the policy is determined by the type of coverage provided and not by the label affixed to the policy by the insurer. Id. at 546. In State Auto, we noted that this concept was in keeping with the general rule that insurance policies are to be strictly construed against the insurer.
Defendant next argues that the homeowners' policy is not subject to R.C. 3937.18 because it was not issued with respect to any particular motor vehicle. However, we also disposed of this argument in State Auto. Therein, we again referred to the Supreme Court's decision in Selander, stating:
 Lastly, appellant asserts that the homeowner's policy is not an automobile or motor vehicle liability policy under former R.C. 3937.18(A) because it was not issued with respect to any particular motor vehicle. However, a similar argument was rejected in Selander. In Selander, the following issue was certified for the Supreme Court's determination:
 Do the provisions of [former] R.C. 3937.18 apply to a policy of primary insurance which provides coverage for claims of liability arising out of the use hired or non-owned automobiles, but is not issued for delivery with respect to some particular vehicle? Id. at 542.
 The Supreme Court answered the above question in the affirmative. Id. In so determining, the Supreme Court rejected this court's holding in Mauler v. Westfield Ins. Co. (Sept. 28, 1989), Franklin App. No. 88AP-914, unreported * * * that the policy must be issued with respect to some particular motor vehicle in order to provide uninsured/underinsured coverage under former R.C. 3937.18. Selander at 544. Instead, the Supreme Court agreed with the rationale in Speelman v. Motorists Mut. Ins. Co. (Dec. 22, 1995), Montgomery App. No. 15362, unreported, wherein the court of appeals concluded uninsured/underinsured motorist coverage was extended despite the fact that the policy failed to identify specific vehicles. Selander at 544. [State Farm, supra.]
We believe that the principles set forth by the Ohio Supreme Court in Selander, and by this court in Goettenmoeller v.Meridian Mut. Ins. Co. (June 25, 1996), Franklin App. No. 95APE11-1553, unreported, and State Auto, supra, apply to the case at bar. Having failed to find any substantive distinguishing factor between the case at bar and the cases set forth above, we find that R.C. 3937.18 applies to the homeowners' policy in question, and that uninsured/underinsured motorist coverage is extended to the plaintiff by operation of law, and in an amount equal to the liability coverage of the policy.
Accordingly, all four assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to vacate the judgment entered in favor of defendant and to enter judgment in favor of plaintiff.
Judgment reversed and cause remanded with instructions.
 ____________________ JUDGE PETREE
TYACK and DESHLER, JJ., concur.